## NEVILS v. VALENTINE SUGARS, Inc.*

### No. 16513.

Court of Appeal of Louisiana. Orleans.
April 5, 1937.

*Writ of certiorari granted June 21, 1937.

Frederick G. Veith, of New Orleans, for appellant.

Deutsch, Kerrigan & Burke, of New Orleans, for appellee.

McCALEB, Jr., Judge.

The plaintiff, a negro laborer, was employed in a hazardous occupation during the month of December, 1931, and while in the performance of his duties, the middle or second finger of his right hand was pierced by a steel splinter or sliver. He was treated for the injury by physicians of the defendant and later, on January 14, 1932, his entire finger was amputated because infection had set in and it was feared that it might expand to other parts of his body. The defendant paid him compensation, at the rate provided for by the Employers' Liability Act, for 20 weeks (Act No. 20 of 1914, § 8, subd. 1 (d), par. 3, as amended by Act No. 242 of 1928, § 1).

On September 7, 1932, he filed this suit, in which he seeks to recover compensation for a period of 150 weeks, on the theory that he has completely lost the use of his right hand. Subsequently, by an amended petition filed on May 28, 1934, he increased his demand, so as to claim compensation for 400 weeks, premised upon the contention that he is totally and permanently disabled to do work of any reasonable character.

In due course, the defendant answered and admitted the employment of plaintiff and the injury during the course of his employment. However, liability is resisted on the ground that plaintiff has fully recovered from his ailment and has been paid all the compensation to which he is entitled by law (viz., 20 weeks for the loss of his second finger of his right hand).

The issue presented is whether plaintiff, as the result of the injury and subsequent

amputation of his finger, has suffered further disability.

Plaintiff's main claim, when the case was first tried, was that, since the amputation of his finger, he has been unable to close his right hand, which disables him from performing manual labor. He contends that he cannot close his right hand because it is now afflicted with fibrinous arthritis and also that, at the top of the stump (where his finger has been amputated), there now exists a "neuroma," which is defined to be a sensation of pain resulting from nerve ends being caught in the scar tissue.

In order to substantiate his allegations, he testified that since the amputation of his finger, he has been unable to close his right hand and that, as a result of his inability in that respect, he cannot perform manual labor. He states that he has attempted to work without success, but admitted that, at the time of the trial, he was in the employ of the emergency relief administration of the United States.

Plaintiff's statement, regarding his inability to close his hand, is corroborated by his physician, Dr. Ford N. Jones, who attributes the disability to a spread of the primary infection, from the point where the finger was injured, to other parts of the hand. This doctor is of the opinion that plaintiff is suffering from fibrinous arthritis which involves all of the joints of the hand. The witness further relates that, when he examined the stump where plaintiff's finger was amputated, it revealed that it is highly sensitive to touch and it is his impression that plaintiff is also afflicted with a neuroma.

On the other hand, defendant submitted the evidence of Drs. J. R. Flowers, D. J. Farley, and J. D. Rives, all of whom testified that the plaintiff is free from disability and voiced the opinion that he is a malingerer.

Dr. Flowers says that he treated plaintiff at the hospital shortly after the injury and diagnosed his ailment to be an infected finger. He asserts that X-rays were taken of the finger which showed a marked involvement of the bone and that he and Dr. Farley decided that, in order to prevent further spread of the infection, it would be wise to amputate the entire finger. Accordingly, on January 22, 1932, the finger was cut off. The doctor says that in due course, the stump healed properly and the plaintiff was discharged as cured on February 26, 1932. He further testified that he examined the plaintiff on the day of trial and that there is no evidence of fibrinous arthritis in the joints of plaintiff's hand. It is also the doctor's opinion that there does not exist a neuroma of the stump of the amputated finger, and that all the subjective symptoms exhibited by plaintiff are feigned.

Dr. D. J. Farley, who performed the operation amputating plaintiff's finger, in conjunction with Dr. Flowers, states that the wound has healed perfectly and there is nothing wrong with the plaintiff at the present time. He fully corroborates the testimony of Dr. Flowers.

Dr. J. D. Rives also had occasion to examine plaintiff, and states that, in his opinion, plaintiff is a malingerer.

After hearing the foregoing evidence, the district court found for the defendant, and we see no reason to disturb its holding on this question of fact. The judge saw and heard the plaintiff testify as well as the expert witnesses. He, therefore, was in a better position than we are to decide the weight to be given to their respective statements.

The judgment was rendered in favor of defendant on December 18, 1934, and before it was signed, on December 22, 1934, the plaintiff filed a motion for a new trial. This motion alleges that the plaintiff had been examined by physicians at the Charity Hospital on March 31, 1932, where his injuries were diagnosed to be a neuroma or involvement of the fibres of median and radial nerve, which facts were not within his knowledge at the time of the trial. It was further alleged in said motion that a recent diagnosis of plaintiff's injury disclosed that the tendon of the second finger of his right hand had been improperly caught in a part of the scar tissue (at the time his finger was amputated) and that this tendon should be released by the proper operation. Upon this showing, the district judge issued a rule to show cause and delayed the signing of the judgment until after the operation on plaintiff's hand had been performed and permitted plaintiff and defendant to introduce further medical evidence respecting the result of the operation. The operation was performed on April 24, 1935, and additional evidence respecting it was taken on July 12, 1935.

At that hearing, Dr. Louis J. Genella testified that he examined plaintiff's right

hand and ventured the opinion that the surgeon, who performed the operation amputating plaintiff's second finger, improperly attached the dorsal tendon to the top of the stump which had the effect of preventing the plaintiff from closing his hand.

Dr. Jones, who performed the second operation, testified that he released the tendon from the top of the stump and that, since this has been done, plaintiff can close his hand.

Dr. Rives, who was present at the time Dr. Jones performed the operation, points out clearly that the tendon involved is a dorsal tendon, the only function of which is to open the hand, and the fact that it was affixed over the end of the bone on the palmar surface of the hand could not possibly have any effect on plaintiff's inability to close his hand. This witness demonstrates that, if the tendon had been improperly affixed, it might have made it more difficult for the plaintiff to open his hand once it had been closed, but the fact that the dorsal tendon was fixed in a position of extension actually should have made it easier for the plaintiff to close his hand than if this tendon had been affixed at some posterior point.

The evidence of Dr. Rives is most convincing and, to our minds, destroys the suppositions of plaintiff's physicians regarding the claimed maladjustment of the tendon. Moreover, Dr. Rives stated that, when the second operation was performed, the stump of the second finger of plaintiff's hand was scrubbed in preparing it for the operation, and the plaintiff showed no evidence of tenderness or neuroma of the alleged affected part. This testimony was unrebutted and amplifies the defendant's theory that the plaintiff is a malingerer.

Counsel for plaintiff directs our attention to the case of Yelverton v. Louisiana Central Lumber Co., 19 La. App. 21, 138 So. 684, 686, decided by our brethren of the Second Circuit, wherein it is said: " * * * however, the courts are slow to declare one a malingerer, unless it is clearly and conclusively shown, for the reason that a gross injustice might be done to an innocent party."

We are fully in accord with this view, but, in the case at bar, the evidence clearly points to the conclusion that the plaintiff has been feigning disability in order to mulct the defendant for additional compensation. This was the opinion of the trial judge, and we concur in his finding.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

